J-S41025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                         :              PENNSYLVANIA
                        :

                v.                       :
                        :
                        :

JEFFREY WILLIAM DENNIS          :
                        :

           Appellant            :      No. 2077 EDA 2017

Appeal from the Judgment of Sentence June 12, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0007466-2016

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:           **FILED SEPTEMBER 17, 2018**

Appellant, Jeffrey William Dennis, appeals from the judgment of sentence following his jury trial convictions for possession with intent to deliver (PWID) cocaine and possession with intent to deliver a non-controlled substance that substantially resembles a controlled substance (PWID (non-controlled substance)).[1]  Upon review, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> A confidential informant told the Warrington Township Police Department that a man named "Jeff" sold cocaine "in weight," meaning in large quantities.  The confidential informant described Jeff as a white male, thin, brown hair, tattoos, with a Fu Manchu goatee, driving a red sporty vehicle normally parked at Harrington's Pub in the Rosemore Shopping Center, Warminster Township, Bucks County, where Jeff was employed as a cook.  The confidential informant made an in-court identification of Appellant

---

[1]  35 P.S. §§ 780-113(a)(30) and 780-113(a)(35), respectively.

---

\*   Former Justice specially assigned to the Superior Court.

as "Jeff." The most recent photograph of Appellant from the Pennsylvania Department of Transportation, and a photograph from Appellant's Facebook profile were used to identify Appellant.

[Sergeant Kevin] Stebner [(Sgt. Stebner)] confirmed that a red Chrysler 200 was parked behind Harrington's Pub, with license plate number JRC-[xxxx]. The vehicle was registered to Joseph Schwab and Jean Marie Lamonica. A review of Pennsylvania Department of Transportation records revealed Appellant shared the same address as the registrants of the red Chrysler 200. Sgt. Stebner ascertained, through an investigation, [that] Appellant operated the red Chrysler 200 parked behind Harrington's Pub.

On November 14, 2015, the confidential informant met with Officer [Charles] Krysick of the Warrington Township Police Department to coordinate a "controlled buy." The confidential informant called Appellant to meet at Harrington's Pub and purchase ¼ ounce of cocaine. The confidential informant and Officer Krysick drove to Harrington's Pub and Appellant gave the confidential informant, in the presence of Office[r] Krysick, ¼ ounce of cocaine in exchange of $330[.00]. On November 18, 2015, the confidential informant and Officer Krysick drove to Harrington's Pub for a second transaction exchanging ¼ ounce of cocaine from Appellant for $300[.00]. The baggies delivered by Appellant on November 14, 2015, tested positive for cocaine. The baggies delivered on November 18, 2015, tested positive for lidocaine. After the second transaction[,] Appellant called the confidential informant inquiring whether Officer Krysick was a police officer.

Sgt. Stebner observed the November 14, 2015, and November 18, 2015, controlled buys. Sgt. Stebner's view, however, was imperfect due to poor lighting on November 14, 2015 and obstructions on November 18, 2015.

\* \* \*

Appellant was arrested by the Warrington Township Police Department and was charged with two (2) counts of criminal use of a communication facility, one (1) count of [PWID] to[-]wit [cocaine], and one count of [PWID (non-controlled substance)]. On April 5, 2017, Appellant was found guilty of PWID and [PWID (non-controlled substance)]. On June 12, 2017, Appellant was sentenced to not less than four (4) years and not more than ten

(10) years for PWID, and five (5) years' consecutive probation, for [PWID (non-controlled substance)].

Trial Court Opinion, 1/19/2018, at 1-3 (record citations and footnotes omitted). This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

A. Did the trial court commit prejudicial and reversible error of law and fact in denying Appellant's motion to dismiss for lack of jurisdiction as the alleged crime occurred outside of Bucks County?

B. Did the trial court commit prejudicial and reversible error of law and fact in denying Appellant's motion to suppress identification evidence due to insufficient prior contacts, lack of opportunity to observe, unreliable evidence, and unconstitutional "fruit" of the uncounseled and unnecessarily suggestive photographic line-up and other identification procedures in violation of [Appellant's] rights under the United

_____

[2] On June 22, 2017, Appellant, through counsel, filed a motion for post-sentence relief. On June 26, 2017, Appellant, *pro se*, filed a notice of appeal. On July 6, 2017, the trial court scheduled a hearing for July 25, 2017. The trial court did not receive Appellant's notice of appeal until July 10, 2017. On July 12, 2017, the trial court cancelled the hearing previously scheduled, and denied Appellant's motion for post-sentence relief. We treat the notice of appeal as filed on the same day as the denial of post-sentence relief. ***See*** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). On July 12, 2017, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. On August 3, 2017, the trial court permitted defense counsel to withdraw and appointed the Public Defender to represent Appellant on appeal. On August 29, 2017, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), finding all of Appellant's issues waived for failing to file a Rule 1925(b) concise statement. Upon application to this Court, we remanded the matter to the trial court to allow Appellant to file a Rule 1925(b) concise statement. Thereafter, Appellant complied with our directives and the trial court subsequently issued a supplemental opinion pursuant to Pa.R.A.P. 1925(a) on January 19, 2018.

States Constitution and the enhanced protections under the Pennsylvania Constitution?

C. Is the verdict based upon insufficient evidence where the alleged identification was based upon a corrupt source, tainted identifications, inadmissible hearsay, evidence of a broken chain of custody, and unlinked, circumstantial evidence?

D. Did the trial court abuse its discretion in imposing an excessive sentence in sentencing Appellant outside the sentencing guidelines based upon unsubstantiated evidence, unproven aggravators, disregarding mitigating evidence, relying on a weight issue that was never presented to the jury, and elevating the gravity score based upon [a] controlled substance with a broken chain of custody?

Appellant's Brief at 5-6 (complete capitalization omitted).

In his first issue presented, Appellant claims that the trial court erred by denying his motion to dismiss for lack of jurisdiction when he alleged that the crime occurred outside of Bucks County and in Montgomery County, instead. *Id.* at 12-13. In sum, Appellant contends:

The trial court's opinion states merely because the Warminster Township Police Department [was] investigating and ultimately made an arrest that action precludes any claim that Bucks County lacked jurisdiction. The Commonwealth alleged without any authenticated documentation to [its] position that the location of the transaction was on the Bucks County side of the Montgomery County/Bucks County border. On cross-examination, the [Commonwealth] witnesses were impeached by the address and location of Pine Grove Memorial Cemetery, The Pub, and Rosemont Shopping Center, all of which state they are in Hatboro, Montgomery County. The [investigating] officer[] responde[d] that he was unaware whether it was a straight or curved [county border] line or even a squiggly line, he is not a cartographer. […] The evidentiary record at best reveals inconsistent testimony by a witness who admitted that the boundary line was not straight and he lacked the qualifications of a cartographer to determine whether the boundary lines for each jurisdiction laid [*sic*]. As such, the Commonwealth failed to establish the necessary

- 4 -

jurisdiction and Bucks County Court of Common Pleas lacked jurisdiction for this case.

*Id.*

Our Supreme Court has determined:

Jurisdiction relates to the court's power to hear and decide the controversy presented. All courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code. […]Venue, on the other hand, refers to the convenience and locality of trial, or the right of a party to have the controversy brought and heard in a particular judicial district. Venue assumes jurisdiction exists and it can only be proper where jurisdiction already exists. Even though all common pleas courts may have jurisdiction to resolve a case, such should only be exercised in the judicial district in which venue lies. Venue in a criminal action properly belongs in the place where the crime occurred.

Venue challenges concerning the locality of a crime […] stem from the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, both of which require that a criminal defendant stand trial in the county in which the crime was committed, protecting the accused from unfair prosecutorial forum shopping. Thus, proof of venue, or the locus of the crime, is inherently required in all criminal cases.

The burden of proof in relation to venue challenges has not been definitively established in our decisional law or our criminal procedural rules. Because the Commonwealth selects the county of trial, we now hold it shall bear the burden of proving venue is proper—that is, evidence an offense occurred in the judicial district with which the defendant may be criminally associated, either directly, jointly, or vicariously. Although our sister states are not in agreement as to the requisite degree of proof, we find the Commonwealth should prove venue by a preponderance of the evidence once the defendant properly raises the issue. Venue merely concerns the judicial district in which the prosecution is to be conducted; it is not an essential element of the crime, nor does it relate to guilt or innocence. Because venue is not part of a crime, it need not be proven beyond a reasonable doubt as essential elements must be. Accordingly, applying the

preponderance-of-the-evidence standard[3] to venue challenges allows trial courts to speedily resolve this threshold issue without infringing on the accused's constitutional rights. Like essential elements of a crime, venue need not be proven by direct evidence but may be inferred by circumstantial evidence. Appellate review of venue challenges, similar to that applicable to other pre-trial motions, should turn on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error.

*Commonwealth v. Gross*, 101 A.3d 28, 32–34 (Pa. 2014) (internal citations, quotations, and original footnotes and omitted). The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *See Commonwealth v. Cousar*, 928 A.2d 1025, 1036 (Pa. 2007).

Clearly, the Court of Common Pleas of Bucks County had *jurisdiction* to hear this case as our Supreme Court has made it clear that all courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code. *Commonwealth v. Gross,* 101 A. 3d at 32. Thus, to the extent Appellant argues that the Court of Common Pleas of Bucks County lacked jurisdiction, he is mistaken. However, as it is apparent that Appellant's argument made to and addressed by the trial court dealt with whether Bucks County Court of Common Pleas was the proper **venue** for this case, we turn our attention to that issue.

---

[3] A preponderance of the evidence is only the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence. *Commonwealth v. Neysmith*, 2018 WL 3153691, at *5 (Pa. Super. 2018) (citation and quotations omitted). "In other words, when weighing the evidence of record, the trial judge need only find that the fact in question is more-likely-than-not true." *Id.*

Here, at a hearing on pre-trial motions, the Commonwealth presented the testimony of Sgt. Stebner wherein the following exchange occurred:

The Commonwealth: Where was the location for the transaction[s?]

Sgt. Stebner: Harrington's Pub, which is located in Rosemore Shopping Center, Warminster Township, Bucks County, Pennsylvania.

The Commonwealth: How do you know it's in Warminster?

Sgt. Stebner: In the government[,] jurisdiction of Warminster it's on the left side, westbound side of County Line Road, which is the jurisdictional boundary between Bucks County and Montgomery County.

The Commonwealth: How many times have you looked at a map delineating where Bucks County starts and Montgomery County ends?

Sgt. Stebner: Since I was old enough to read a map. I was born and raised in Warminster.

The Commonwealth: And you're positive Harrington's Pub is on the Warminster side and not the Upper Moreland or Hatboro side?

Sgt. Stebner: 100 percent.

\* \* \*

The Commonwealth: If I showed you a map of the general area, an aerial photo, would you be able to recognize it?

Sgt. Stebner: Yes.

\* \* \*

| | |
|---|---|
| The Commonwealth: | Sergeant, I'll show you Exhibit C-1. Do you recognize what that is? |
| Sgt. Stebner: | A photograph depicting the Rosemore Shopping Center. |
| The Commonwealth: | Is Harrington's Pub within that shopping center? |
| Sgt. Stebner: | It is. |

\*          \*          \*

| | |
|---|---|
| The Commonwealth: | Do you see County Line Road anywhere on this photograph? |
| Sgt. Stebner: | I do. |
| The Commonwealth: | Is Harr[ington's] on the Bucks County side? |
| Sgt. Stebner: | It is. |

N.T., 4/3/2017, at 22-25. Later, Sgt. Stebner confirmed that the Warminster Police Department was only a couple of blocks away from Harrington's Pub. *Id.* at 73.

In response, Appellant presented Sgt. Stebner with a letter from Harrington's Pub bearing a Hatboro mailing address. *Id.* at 29. Sgt. Stebner admitted that Hatboro is in Montgomery County. *Id.* at 30.

In resolving the issue, the trial court noted:

[I]t's clear to me it's on the Bucks County side. [Sgt. Stebner] grew up there. In fact, […] the Warminster Police Station is a couple blocks away. […] So it's clear it's Bucks County and there's no doubt in my mind that it's on the Bucks County side of County Line [Road]. Why they use a Hatboro address, I suppose the mailing address is one thing, but its location is Warminster.

- 8 -

*Id.* at 73-74. In its Rule 1925(a) opinion, the trial court concluded that the Commonwealth presented evidence that the entire investigation occurred within Warminster Township in Bucks County and that venue was proper. Trial Court Opinion, 1/19/2018, at 5.

Based upon applicable law and our standard of review, we discern no error in denying Appellant's venue challenge. The Commonwealth presented testimony from a seasoned police sergeant, familiar with the bounds of Bucks County. According to the sergeant's testimony, the crimes at issue took place solely in Bucks County. Sgt. Stebner was able to point specifically to the location on a map delineating county lines and testified with complete certainty that Harrington's Pub was located in Bucks County where the entire investigation, from start to finish, occurred. This is simply not a case where the Commonwealth was engaging in unfair prosecutorial forum shopping. Accordingly, we discern no error by the trial court in determining Bucks County was the proper venue in this criminal matter.

In his second issue presented, Appellant argues that the trial court erred by denying his motion to suppress identification evidence and "avers that the in-court, preliminary hearing, and/or photographic array identifications violated his [d]ue [p]rocess protections under the Pennsylvania Constitution." Appellant's Brief at 14. The police investigation began on information from a confidential informant's physical description of a man named "Jeff" who worked at Harrington's Pub, sold narcotics, and drove a sporty, red car (often parked behind the pub). At the suppression hearing, Sgt. Stebner testified

that, prior to the controlled drug purchases, he conducted foot surveillance of the rear of Harrington's Pub and ran the license plate number on a red Chrysler parked there. N.T., 4/3/2017, at 32. The car was registered to a man and woman who did not match the description of the person described by the confidential informant. *Id.* As such, Sgt. Stebner contacted the Abington Police Department, where the registered owners resided, to inquire who operated that vehicle. *Id.* at 32-33. The Abington Police Department advised Sgt. Stebner that Appellant was the operator of the red Chrysler and gave him Appellant's date of birth. *Id.* Using that information, Sgt. Stebner obtained a driver's license photograph of Appellant, showed it to Officer Krysick and the confidential informant, and both positively identified Appellant as the person who sold them narcotics. *Id.* at 33. At the suppression hearing, counsel for Appellant argued that such actions constituted "confirmation bias" because a sole photo of Appellant was shown to the investigating officer and confidential informant and they were essentially told Appellant was the person they were seeking.[4] *Id.* at 20. In sum, Appellant asserts that his identification should have been suppressed because:

---

[4] In further support of this issue, Appellant also contends that Sgt. Stebner's testimony regarding his conversation with an unknown person at the Abington Police Department was "inadmissible hearsay evidence." Appellant's Brief at 17. Appellant did not object to the alleged hearsay or argue that it was inadmissible in his motion to suppress. Likewise, while he generally challenged the sufficiency of the evidence, making reference to "inadmissible hearsay" in his concise statement of errors complained of on appeal, Appellant did not complain of hearsay with regard to suppression. Thus, for all of the

1. The officers had no prior contact with Appellant.

2. Neither officer could see the face of the person engaged in the transaction.

3. Neither officer could observe the target because of poor lighting and obstructions.

4. None of the officers identified the apparent and numerous tattoos on his person.

5. Neither officer did a comparative photo array to assess their suggestive presumption.

6. The officers were prejudiced by the mere proximity to Appellant's work.

7. The confidential informant had no prior knowledge of Appellant, who was one of at least ten "Jeffs" who frequented or worked at the location.

Appellant's Brief at 17.

We review the denial of a motion to suppress as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as

_____

foregoing reasons, we conclude that Appellant waived this portion of his current argument. *See Commonwealth v. Menginie*, 458 A.2d 966, 970 (Pa. Super. 1983) (to preserve an issue regarding the admissibility of evidence, an appellant must file a motion *in limine* or a suppression motion and argue the specific grounds sought for suppression); *see also Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014), *citing* Pa.R.A.P. 1925(b)(4)(vii) (issues not included in Rule 1925(b) statement are waived); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.

Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. McClellan*, 178 A.3d 874, 880–881 (Pa. Super. 2018) (citation omitted). "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047–1048 (Pa. 2012).

Here, the trial court initially determined that the identification evidence was admissible, but Appellant could challenge its weight. Trial Court Opinion, 1/19/2018, at 9. Thereafter, the trial court concluded:

There is no identification issue in this case. Appellant walked up to a car that had a police officer and confidential informant inside, he handed them drugs and accepted cash in exchange.

* * *

The confidential informant and Officer Krysick viewed Appellant from the distance of a few feet. Appellant was readily identifiable from the controlled buys not the photograph presented to them by Sgt. Stebner.

*Id.* at 9-10.

Upon review of the suppression hearing, we agree. Initially, we note that Officer Krysick was physically present for both controlled buys. Officer

- 12 -

Krysick drove the confidential informant to Harrington's Pub and was inside the car when both transactions took place. N.T., 4/3/2017, at 49-52. On both occasions, Officer Krysick was in the driver's seat, witnessed the transactions from two feet away through the open passenger side window, and could see Appellant's unobstructed face. *Id.* Officer Krysick positively identified Appellant at the hearing. *Id.* Moreover, Sgt. Stebner testified that he did not show Officer Krysick a photograph of Appellant until after the first controlled buy. *Id.* at 33 and 51. Based upon all of the foregoing, the facts of record belie Appellant's assertion that the police improperly suggested Appellant's identification. Instead, the record supports the conclusion that police physically identified Appellant selling drugs prior to seeing his photograph. The subsequently obtained photograph merely confirmed Appellant's name and date of birth. Accordingly, we conclude that the Commonwealth met its burden of proof that the evidence was legally obtained. As such, Appellant's second issue lacks merit.

Appellant's third issue is somewhat related to his second. Appellant claims that there was insufficient identity evidence to support his convictions as "the Commonwealth failed to establish Appellant committed these crimes." Appellant's Brief at 19. More specifically, he contends that there was insufficient evidence because the verdict was based upon corrupt and tainted

identifications, inadmissible hearsay evidence, and a broken chain of custody regarding the testing of the recovered substances.[5] *Id.*

Our standard of review is as follows:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

\*          \*          \*

A victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime. *See Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa. Super. 2007) (holding evidence sufficient to establish the identity of the robber/burglar where "the complainant identified [the a]ppellant, in open court, as one of the men that entered his home"); *Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa. Super. 1978) ("[I]t is settled that a positive identification by one witness is sufficient for conviction.").

_____

[5] We have already determined that Appellant waived his claim pertaining to alleged hearsay. In addition, Appellant has failed to support his chain-of-custody argument with legal or record citations. We find this aspect of Appellant's current argument waived. *See* Pa.R.A.P. 2119; *see also Commonwealth v. Rhodes*, 54 A.3d 908, 915 (Pa. Super. 2012) (an appellant's failure to set forth a relevant legal analysis and/or to cite to relevant legal authority results in waiver).

- 14 -

\*        \*        \*

> "Variances in testimony ... go to the credibility of the witnesses and not the sufficiency of the evidence." **Commonwealth v. Galloway**, 434 A.2d 1220, 1222 (Pa. 1981).

**Commonwealth v. Johnson**, 180 A.3d 474, 478 (Pa. Super. 2018).

Upon review, there was sufficient evidence regarding Appellant's identity presented at trial. The confidential informant identified Appellant at trial as the person who sold him narcotics. N.T., 4/5/2017, at 60-73. Likewise, at trial, Officer Krysick identified Appellant as the perpetrator of the two crimes. **Id.** at 111-126. Because two witnesses identified Appellant at trial, the trial court did not err by denying Appellant relief on his claim challenging the sufficiency of identification evidence.

Finally, Appellant avers that the trial court abused its discretion by imposing an excessive sentence outside of the sentencing guidelines based upon unsubstantiated evidence and overlooked mitigating factors. Appellant's Brief at 22-26. More specifically, regarding mitigation, Appellant argues that the trial court failed to consider his age at the time of sentencing (30 years old) and his childhood struggles in a bad environment. **Id.** at 25. Further, Appellant maintains that the trial court erred by considering artificially inflated sentencing guidelines based upon "a conviction that was overturned/dismissed." **Id.** Finally, Appellant contends "the jury was not presented with a specific questions nor instructions to determine the weight

of the alleged substances sold in this case […] in violation of ***Alleyne v. United States***, 570 U.S. 99, 133 S.Ct. 2151 (2013) and its progeny."[6] ***Id.***

We adhere to the following standards:

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the

---

[6] "[T]he [United States] Supreme Court rendered the ***Alleyne*** decision on June 17, 2013, and held that sentencing schemes which predicated the imposition of **a mandatory minimum sentence** on a fact found by the sentencing court, by a preponderance of the evidence, were unconstitutional." ***Commonwealth v. DiMatteo***, 177 A.3d 182, 185 (Pa. 2018) (emphasis added). "The decision was an extension of ***Apprendi v. New Jersey***, 530 U.S. 466, 147 L.Ed.2d 435 (2000), which held any fact that increases the punishment for a crime beyond the statutorily prescribed maximum must be submitted to the jury and found beyond a reasonable doubt." ***Id.*** Upon review of the record, Appellant did not receive a mandatory minimum sentence and, therefore, ***Alleyne*** is inapplicable herein.

trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Manivannan*, 186 A.3d 472, 489 (Pa. Super. 2018) (internal case citations omitted) (emphasis in original).

Upon review, Appellant has complied with the first three requirements as set forth above. Appellant filed a motion for reconsideration of sentence raising his discretionary aspect of sentencing claim, filed a notice of appeal with this Court, and included a separate concise statement in his appellate brief pursuant to Pa.R.A.P. 2119. As such, we proceed to determine whether Appellant has raised a substantial question.

Here, the trial court concluded that Appellant did not raise a substantial question. Trial Court Opinion, 1/19/2018, at 12. It determined that Appellant's aggregate sentence, for both counts, was within the aggregate standard range under the sentencing guidelines. *Id.* The trial court noted that it imposed a period of incarceration only for PWID, opting to sentence Appellant on the other count to probation. *Id.* The trial court "sentenced Appellant to a period of incarceration only on one count, rather than two consecutive terms of imprisonment, for the administrative benefit it confers upon the Department of Corrections and Adult Probation and Parole." *Id.* The

trial court opined, however, that it would have "sentenced [Appellant] to the exact same effective time period, but [with consecutive sentences on both] counts [], again in the standard range." *Id.*

We disagree with the trial court's conclusion that Appellant failed to raise a substantial question.  Here, the trial court erred by finding that the aggregate sentence (for PWID and PWID (non-controlled substance)) was within the aggregate standard range of the guidelines.  In examining whether an appellant raises a substantial question, this Court looks at each, individual sentence and whether each sentence falls outside of the standard range guidelines.  *See Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. 2014) (finding appellant presented a substantial question as to one of three individual sentences).  "This Court has held that claims that the sentencing court imposed a sentence outside the standard guidelines without stating adequate reasons on the record presents a substantial question." *Id.* at 759.  Here, there is no dispute that the standard sentencing guideline range for PWID is 24 to 30 months of incarceration.  *See* Appellant's Brief at 22; *see also* Trial Court Opinion, 1/19/2018, at 12.  Appellant received a sentence of 48 to 120 months of imprisonment.  N.T., 6/12/2017, at 29.  Appellant avers that the trial court failed to state adequate reasons on the record for imposing a sentence outside of the sentencing guidelines regarding his PWID

conviction. Accordingly, we conclude that Appellant has raised a substantial question for our review.[7]

Our standard of review of a challenge to the discretionary aspects of sentence is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. The sentencing guidelines are not mandatory, and sentencing courts retain broad discretion in sentencing matters, and therefore, may sentence defendants outside the guidelines. In every case where the court imposes a sentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. However, this requirement is satisfied when the judge states his reasons for the sentence on the record and in the defendant's presence. Consequently, all that a trial court must do to comply with the above procedural requirements is to state adequate reasons for the imposition of sentence on the record in open court.
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where pre-sentence reports exist,

_____

[7] Appellant does not argue that the trial court abused its discretion in imposing probation on his conviction for PWID (non-controlled substance) and, thus, we confine our review to the sentence for PWID.

we shall presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.

***Antidormi***, 84 A.3d at 760–761 (internal citations, quotations, ellipses, and brackets omitted).

Here, the trial court had the benefit of a pre-sentence investigation report, which it considered. N.T., 6/12/2017, at 3 and 26. Counsel for Appellant initially conceded that he reviewed the report and had no changes or edits. *Id.* at 3. However, when the Commonwealth was reciting his criminal history, Appellant took issue with a felony drug charge that was subsequently dismissed following an appeal. *Id.* at 19-21. That charge, however, was not contained in the presentence report and the report accurately reflects Appellant's criminal history. *Id.* at 20. Finally, before sentencing, the Commonwealth recognized that the pre-sentence investigation report listed a standard sentence guideline for PWID at 27 to 33 months of incarceration, but the actual range was actually 24 to 30 months of incarceration. *Id.* at 18. As such, the trial court was made aware of all the relevant information, including the accurate guideline range, prior to sentencing.

Moreover, the trial court stated its reasons for departing from the sentencing guidelines on the record. The trial court examined Appellant's criminal history and determined that his prior firearm offenses, coupled with his new PWID offenses, had a serious impact on the community. *Id.* at 27. The trial court opined that Appellant was in need of rehabilitation because he

committed crimes as both a juvenile and an adult and continued to violate probation and parole and engage in criminal activity. *Id.* at 27-28. In fashioning sentence, the trial court also considered Appellant's age and intellect, stating it had confidence that he could "become a productive member of society if [he] would spend [his] energy in doing things that are legal as opposed to illegal." *Id.* at 29.

We discern no abuse of discretion. The trial court had the benefit of a pre-sentence investigation report. The parties made corrections to that report and the trial court considered them. Moreover, the trial court stated its reasons for an upward departure at the time of sentencing. Appellant is not entitled to relief.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/17/18